IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ROSALINDA TRUJILLO, )
 )
    Plaintiff, )
 )
v. ) Case No.  CIV-12-586-F
 )
CAROLYN W. COLVIN,[1] )
Commissioner, Social Security )
Administration, )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Rosalinda Trujillo ("Plaintiff") has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act.  This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3).  Upon review of the pleadings, the administrative record ("AR") and the parties' briefs, the undersigned recommends the Commissioner's decision be reversed and the matter remanded for further proceedings.

---

[1]    Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

I.  **Administrative proceedings.**

In support of her October 2008 application for benefits, Plaintiff alleged that problems with her pancreas and liver, high blood pressure, and diabetes resulted in three to four hospitalizations a year and became disabling as of January 2001. AR 129-131, 157. Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted a May 2010 hearing where Plaintiff – and an interpreter – appeared and waived her right to an attorney or other representative. AR 38-64, 122. In his October 2010 hearing decision, the ALJ found Plaintiff retained the ability to perform her past relevant work and, accordingly, was not disabled within the meaning of the Social Security Act. AR 26-33. The Appeals Council of the Social Security Administration declined Plaintiff's request for review. AR 1-4. Plaintiff, through counsel, then sought review of the Commissioner's final decision in this court. Doc. 1.

II.  **The ALJ's findings.**

The ALJ first underscored the fact that Plaintiff was seeking disability insurance benefits and that her coverage for those benefits expired on December 31, 2007. AR 26. Accordingly, the ALJ noted that Plaintiff "must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." AR 26. Further, he found that Plaintiff had

engaged in substantial gainful activity from January 1, 2001, the date of her alleged onset of disability, until December 31, 2001. AR 28. Thus, the ALJ's findings addressed the period from January 1, 2002 until December 31, 2007. These determinations are not challenged on appeal.

The ALJ then found on review of the medical evidence of record that through December 31, 2007, Plaintiff was severely impaired by chronic pancreatitis,[2] hyperglycemia, mild hypokalemia, elevated transaminases, mild thromocytopenia, high blood pressure, and diabetes mellitus, none of which singly or in combination met or equaled a listed impairment. AR 29-30. Next, following his consideration of the entire record – including subjective and opinion evidence – the ALJ determined that through December 31, 2007, Plaintiff had the residual functional capacity (RFC)[3] to perform a full range of light work as defined by Social Security regulation. AR 30. Ultimately, based on his finding that Plaintiff's past relevant work as a cleaner/housekeeper and a plastic molding machine operator did not require the performance of activities precluded by that RFC, the ALJ found that Plaintiff was not disabled within the

---

[2] "Pancreatitis" – the primary focus of this report – is the "[inflammation of the pancreas." *Stedman's Medical Dictionary* 1410 (28th ed. 2006).

[3] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

meaning of the Social Security Act before her disability insurance coverage ended on December 31, 2007. AR 33.

## III. Analysis.

### A. Standard of review.

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*

### B. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

### C.   **Plaintiff's claims of error.**

While Plaintiff presents multiple claims of error on judicial review, remand is recommended for the reason that the ALJ's assessment of the credibility of Plaintiff's complaints of disabling pancreatitis, abdominal pain, and nausea lacks record support. Accordingly, the undersigned will not address Plaintiff's remaining claims. *See Watkins v. Barnhart*, 350 F. 3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**D.     Plaintiff's credibility.**

**1.     The ALJ's credibility findings.**

An ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as the following:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted). Here, and as part of his RFC determination, the ALJ began his consideration of the credibility of Plaintiff's subjective complaints by summarizing her testimony:

> The claimant testified she was able to read and write in Spanish, but not English. She reported having a surgery in 2001 that caused damage to her liver and pancreas. The claimant stated she was having problems with her pancreas every 3 to 6 months. She reported her symptoms as abdominal pain and nausea.

AR 31. He then made the following findings with regard to those subjective complaints:

> After careful consideration of the evidence, the undersigned finds

that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant alleges disability due to problems with her pancreas. However, the medical record showed the claimant's bouts of pancreatitis were caused by ACE Inhibitors. The claimant's medication was changed accordingly. (Exhibit 5F at 17)

The claimant reported having uncontrolled diabetes mellitus. The medical record showed the claimant's blood sugar was elevated in July 2006. (Exhibit 7F at 58) However, the medical record subsequently showed her symptoms were controlled with medication. (Exhibit 15F at 17) Additionally, the claimant's hypertension was controlled with medication. (Exhibit 15F at 12)

The evidence shows that the claimant does have an underlying medically determinable impairment that could reasonably cause some pain symptomology. (Exhibit 5F at 17) However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration, or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a continuing and regular basis. In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of limitations alleged by the claimant. (Exhibit 3F at 1) The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such severity or frequency as to preclude the range of work described above. Rather, the factors set forth in 20 CFR 404.1529 and 416.929 support the residual functional capacity that has been found.

The claimant reported in a Function Report she was able to prepare meals, perform household chores, wash clothes, and care for her personal hygiene. (Exhibit 4E at 2-3). The claimant has described

> activities of daily living that are more than one would expect for a person claiming total disability.
>
> Although the claimant's work activity did not rise to the level of substantial gainful activity, it showed the claimant was more capable, at times, than alleged. The undersigned finds this activity does not enhance the claimant's credibility.

AR 31-32.

Thus, the ALJ found Plaintiff's testimony that she was disabled as a result of experiencing problems – every three to six months – with her pancreas to be less than fully credible. And, while he provided several reasons to discount her general credibility, the ALJ specifically linked his findings as to Plaintiff's pancreas-related claims to their incompatibility with the objective medical evidence and to the fact that her incidents of pancreatitis, symptomized by abdominal pain and nausea, were caused by ACE inhibitors, a problem addressed by a change in medication.

### 2. The ALJ's objective medical evidence findings.

With regard to the medical evidence of pancreatitis, the ALJ's decision noted the following:

> The medical record showed the claimant was treated for pancreatitis in November 2005. She was diagnosed with chronic pancreatitis and biliary tree dysfunction. (Exhibit 2F at 6). . . .
>
> In January 2006, the medical record showed the claimant . . . . had a history of pancreatitis. (Exhibit IF at 9). . . .
>
> The claimant's treating physician, Mark L. Wellington, D.O., stated

8

in July 2006 that the claimant's complete blood count revealed normal findings. He specifically noted the claimant's amylase and lipase levels were both normal and there was no suggestion of pancreatitis. (Exhibit 7F at 61) However, in November 2006, Dr. Wellington reported the claimant's blood work revealed she had significant pancreatitis and elevated blood sugar level at 181. (Exhibit 7F at 58)

The claimant reported in February 2007 that she had chronic recurrent pancreatitis. She described her pancreatitis episodes as having pain symptoms and nausea at least once a year. (Exhibit 3F at 2) A CT scan of the claimant's abdomen showed she had acute pancreatitis with no change when compared to the August 2006 CT scan. (Exhibit 3F at 4). The claimant was diagnosed with recurrent pancreatitis, secondary to the change at the common bile duct with hepaticojejunostomy. (Exhibit 3F at 4)

At a follow up visit, the claimant stated she had not had any recurrent symptoms of abdominal pain or signs of pancreatitis. (Exhibit 3F at 1)

In October 2007, the claimant sought treatment for acute pancreatitis and high blood pressure. Her prescription medications were Norvasc, Lisinopril, and Creon. (Exhibit 5F at 10)

Again, in December 2007, the claimant reported having abdominal pain and nausea. The examining physician, Ralph Shadid, M.D., noted the claimant was diagnosed with pancreatitis in 200l. He stated the claimant had done essentially well since then until recently when she had two recurrent bouts of pancreatitis. Dr. Shadid stated one of the claimant's recent bouts of pancreatitis was due to Lisinopril, which the claimant was taking for high blood pressure. He additionally stated the claimant's x-rays showed she had some minimal dilatation of the extra hepatic biliary ducts but no structure was seen. (Exhibit 5F at 17) The claimant was diagnosed with recurrent pancreatitis, hyperglycemia, mild hypokalemia, elevated transaminases, and *mild* thrombocytopenia. (Exhibit 5F at 19)

AR 29-30.

### 3. Other objective medical evidence of Plaintiff's pancreatitis, abdominal pain, and nausea.

The undersigned's review of the same medical records reveals that the ALJ's summary of the objective medical evidence failed to include the complete history of Plaintiff's pancreas-related medical encounters. The ALJ's summary also failed to adequately reflect the nature – including hospitalizations – of those encounters. In addition, while the ALJ accurately repeated Dr. Shadid's December 2007 findings, AR 29-30, he failed to reference subsequent findings made by Dr. Shadid based on an MRI study. The following is a chronological summary of the medical records of Plaintiff's emergency room treatments and hospitalizations from 2002 until the end of 2007. It does not include pancreas-related complaints made by Plaintiff during office visits with physicians. Moreover, it does not include hospitalizations and procedures related to Plaintiff's liver and kidney stones.[4]

---

[4] In responding to the ALJ's request that she tell him, in her own words, why she cannot work, Plaintiff – through the interpreter – gave the following testimony:

> In 2001 – 2000, I had a surgery. It was supposed to be a very simple operation, but my operation lasted nine hours. Then after that, I haven't been well because my organs were reversed. And then from there, they damaged my liver and pancreas. Then I had

- April 13, 2005, OU Medical Center - Emergency Department; complaints of epigastric pain, nausea, and vomiting; working diagnoses of acute abdominal pain and pancreatitis. AR 311-312.

- April 13, 2005 to April 17, 2005, hospitalized at OU Medical Center; admission diagnosis includes acute pancreatitis; discharge diagnosis of pancreatitis secondary to common bile duct stone. AR 313-318. The discharge summary references past medical history of "pancreatitis secondary to gallbladder stones in 2002." AR 316.

- November 26, 2005, OU Medical Center - Emergency Department; complaints of abdominal pain; states that "she has had this pain in the past and says it was something wrong with her liver before." AR 319-321, at 319.

- November 26, 2005 to December 5, 2005, hospitalized at OU Medical Center. AR 322-327. On admission, Plaintiff's past medical history was noted: "Acute pancreatitis. The patient has had several episodes of acute pancreatitis. Per chart review, it seems that most of these causes were secondary to gallstones. It should be noted that the patient had cholecystectomy in 2000." AR 322. The discharge diagnosis was, "Pancreatitis, resolving." AR 325.

- August 7, 2006, OU Medical Center - Emergency Department; complaints of abdominal pain; diagnosis of acute pancreatitis. AR 351-353.

- August 7, 2006 to August 10, 2006, hospitalized at OU Medical Center; diagnosis of acute pancreatitis. AR 354-359. On discharge, it was noted that Plaintiff has "a history of laparoscopic cholecystectomy complicated by bile duct injury and hence episodes of recurrent acute pancreatitis." AR 357.

---

a surgery on my kidneys, kidney surgery. Then my pancreas hasn't functioned well and then every three to six months, I have to be in the hospital because I feel sick. I feel nausea, vomiting, and a lot of pain.

AR 54. She further testified that she had liver surgery in 2003. AR 55.

11

- December 21, 2006, OU Medical Center - Emergency Department; complaints of abdominal pain. AR 360-363.

- December 21, 2006 to December 26, 2006 - hospitalized at OU Medical Center with pancreatitis. AR 364-366.

- April 2, 2007, OU Medical Center - Emergency Department: complaints of epigastric pain and vomiting; diagnosis of abdominal pain and pancreatitis. AR 367-369.

- April 2, 2007 - April 4, 2007, hospitalized at OU Medical Center, with a discharge diagnosis of resolving pancreatitis. AR 370-372.

- October 1, 2007 to October 4, 2007, hospitalized at Integris Southwest Medical Center; admitted from emergency room on complaints of abdominal pain. AR 284-289. Her discharge diagnosis was "recurrent pancreatitis, possible cause is ACE inhibitor." AR 295-299, at 295.

- December 22, 2007 to December 27, 2007, hospitalized at Integris Southwest Medical Center; admitted from emergency room on complaints of abdominal pain; diagnosis included recurrent pancreatitis. AR 290-294, 305-309.

    Dr. Shadid's discharge summary – made subsequent to his previous findings on x-ray review, AR 291, that were relied on by the ALJ – stated that "[a]n MRI of the abdomen revealed worsening of the findings of pancreatitis with increasing peripancreatic inflammatory changes, persistent enlargement of the head of the pancreas and increasing enlargement of the common bile duct as well as the main pancreatic duct." AR 300.

**IV.   Recommendation and notice of right to object.**

Based on the foregoing, the ALJ's credibility findings appear to have been grounded on an incomplete and erroneous construction of the record bearing on Plaintiff's pancreas-related pain and other symptoms. Substantial evidence fails

to support the ALJ's finding that "the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of limitations alleged by the claimant" is not supported by substantial evidence. AR 31. Contrary to the ALJ's finding, Plaintiff suffered from more than occasional "bouts" of pancreatitis that were remedied by a change in medication. AR 31. Accordingly, it is recommended that the Commissioner's decision be reversed and the matter remanded for further proceedings, including consideration of the *complete* medical record.

The parties are advised of their right to object to this Report and Recommendation by the 5th day of April, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 15th day of March, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE